Case No. 16-11369

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

JOSHUA PARNELL,

Plaintiff/Appellee,

v.

CASHCALL, INC., Defendant/Appellant.

On appeal from the United States District Court
for the Northern District of Georgia
Case No. 4:14-cv-0024-HLM

---

## REPLY BRIEF OF APPELLANT CASHCALL, INC.

---

William J. Holley, II
Nancy H. Baughan
Scott E. Zweigel
Erin M. Moore
Parker, Hudson, Rainer & Dobbs LLP
303 Peachtree Street, N.E.
Suite 3600
Atlanta, GA 30308
Telephone: (404) 523-5300
Facsimile: (404) 522-8409

Joseph L. Barloon
Austin K. Brown
*Admitted Pro Hac Vice*
Skadden, Arps, Slate, Meagher
& Flom LLP
1440 New York Avenue, NW
Washington, DC 20005
Telephone:  (202) 371-7000
Facsimile: (202) 393-5760

*Attorneys For Defendant-Appellant
CashCall, Inc.*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................ i

TABLE OF AUTHORITIES ............................................................... iii

REPLY ARGUMENT ..........................................................................1

I.  Mr. Parnell Still Fails To Identify Specific Grounds For Voiding The
    Delegation Provision. .................................................................3

    A.  The Delegation Provision And The Arbitration Clause Are Distinct
        Agreements That Cannot Be Voided Simultaneously On Identical
        Grounds. ..............................................................................4

    B.  At Any Rate, Mr. Parnell's Grounds For Voiding The Arbitration
        Clause
        Fail When Applied To The Delegation Provision. ..............................6

II. The Delegation Provision May Not Be Voided On Unconscionability
    Grounds..................................................................................11

    A.  The FAA Preempts Mr. Parnell's Unconscionability Defense...........12

    B.  The Unconscionability Rule Applied By The District Court
        Improperly Targets Arbitration Agreements.....................................13

    C.  The Delegation Provision Is Not Unconscionable. ............................15

III. *Inetianbor* and *Jackson* Are Not Relevant Here............................17

    A.  *Inetianbor* Does Not Replace An Individual Analysis Of Mr. Parnell's
        Contract Language. ...............................................................18

        1.  This Court Must Interpret The Contract Before It...................18

        2.  The Agreement Here Requires A Different Result From That
            Reached In *Inetianbor* and *Jackson*........................................20

    B.  "Integrality" To The Extent Relevant, Is An Individual Inquiry. .......22

IV.   Mr. Parnell Cannot Rebut Clear Evidence That Similar Disputes Are
      Proceeding Effectively In Arbitration. ...........................................................24

CONCLUSION ....................................................................................................26

CERTIFICATE OF COMPLIANCE......................................................................28

CERTIFICATE OF SERVICE ...............................................................................29

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Express Co. v. Italian Colors Rest.*,
    133 S. Ct. 2304 (2013).........................................................................7

*Arnsdorff v. Papermill Plaza, LLC*,
    326 Ga. App. 438, 756 S.E.2d 668 (2014) .......................................18

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333, 131 S. Ct. 1740 (2011)................................2, 12, 13, 14

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
    475 U.S. 643, 106 S. Ct. 1415 (1986).................................................1

*Banks v. Cashcall, Inc.*,
    --- F. Supp. 3d. ----, No. 6:14-cv-488-Orl-37TBS, 2016 WL
    3021749 (M.D. Fla. May 26, 2016)...................................................26

*Booker v. Robert Half Int'l, Inc.*,
    413 F.3d 77 (D.C. Cir. 2005)..............................................................10

*Cappuccitti v. DirecTV, Inc.*,
    623 F.3d 1118 (11th Cir. 2010)..........................................................10

*Cargill Rice, Inc. v. Empresa Nicaraguense Dealimentos Basicos*,
    25 F.3d 223 (4th Cir. 1994) ...............................................................25

*Cruz v. Cingular Wireless, LLC*,
    648 F.3d 1205 (11th Cir. 2011)....................................12, 13, 14, 22

*In re Checking Account Overdraft Litig. MDL No. 2036*,
    672 F.3d 1224 (11th Cir. 2012) (*Hough v. Regions Fin. Corp.*)........16

*DIRECTV, Inc. v. Imburgia*,
    136 S. Ct. 463 (2015).......................................................................1, 7

*Doctor's Assocs., Inc. v. Casarotto*,
    517 U.S. 681, 116 S. Ct. 1652 (1996)...............................................13

*Hayes v. Delbert Servs. Corp.*,
    811 F.3d 666 (4th Cir. 2016). ...............................................................................9

*Inetianbor v. CashCall, Inc*.,
    768 F.3d 1346 (11th Cir. 2014) ...................................................................*passim*

*Inetianbor v. CashCall, Inc.*,
    962 F. Supp. 2d 1303 (S.D. Fla. 2013) ..............................................................19

*Jackson v. Payday Fin., LLC*,
    764 F.3d 765 (7th Cir. 2014) ......................................................................18, 19

*Jenkins v. First Am. Cash Advance of Ga., LLC*,
    400 F.3d 868 (11th Cir. 2005) ...........................................................................14

*Kristian v. Comcast Corp.*,
    446 F.3d 25 (1st Cir. 2006)............................................................................9, 10

*Lomax v. Woodmen of World Life Ins. Soc.*,
    228 F. Supp. 2d 1360 (N.D. Ga. 2002)...............................................................10

*Long John Silver's Rests., Inc. v. Cole*,
    514 F.3d 345 (4th Cir. 2008) .............................................................................25

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    437 U.S. 614, 105 S. Ct. 3346 (1985)...............................................................1, 7

*Nat'l Freight, Inc. v. Consolidated Container Co.*,
    --- F. Supp. 3d ----, Case No. 1:14-cv-03429-AT, 2015 WL
    10568022 (N.D. Ga. Jan. 26, 2015)...................................................................17

*NEC Techs., Inc. v. Nelson*,
    267 Ga. 390, 478 S.E.2d 769 (1996) ..................................................................15

*Parnell v. CashCall, Inc.*,
    804 F.3d 1142 (11th Cir. 2015) ...........................................................4, 5, 10, 11

*Pendergast v. Sprint Nextel Corp.*,
    691 F.3d 1224 (11th Cir. 2012). ...................................................................12, 13

*Rent-A-Ctr., W., Inc. v. Jackson*,
    561 U.S. 63, 130 S. Ct. 2772 (2010).............................................................*passim*

*RLI Ins. v. Highlands on Ponce, LLC*,
  280 Ga. App. 798, 635 S.E.2d 168 (2006) ........................................................19

*Smith v. Western Sky Fin., LLC*,
  --- F. Supp. 3d ----, No. 15-3639, 2016 WL 1212697 (E.D. Pa.
  Mar. 4, 2016)....................................................................................................9

*Solymar Invs., Ltd. v. Banco Santander S.A.*,
  672 F.3d 981 (11th Cir. 2012) ....................................................................1, 22

*Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship*,
  432 F.3d 1327 (11th Cir. 2005) ....................................................6, 7, 8, 9, 17

*U.S. Nutraceuticals, LLC v. Cyanotech Corp.*,
  769 F.3d 1308 (11th Cir. 2014) ......................................................................17

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
  363 U.S. 574, 80 S. Ct. 1347 (1960)................................................................22

*Williams v. CashCall, Inc.*,
  92 F. Supp. 3d 847 (E.D. Wisc. 2015)........................................................21, 24

*Zechman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  742 F. Supp. 1359 (N.D. Ill. 1990) ..................................................................23

**Statutes**

9 U.S.C. § 2 ..............................................................................................12, 14

9 U.S.C. § 5 ................................................................................3, 22, 24, 25, 26

FLSA § 16(b) ....................................................................................................25

**Other Authorities**

Brief of Federal Trade Commission as Amicus Curiae,
  *Jackson v. Payday Fin., LLC*, 764 F.3d 765 (7th Cir. 2014), 2013
  WL 5306136 (Sept. 13, 2013). ........................................................................16

Fed. R. App. P. 32(a)(5)...................................................................................28

Fed. R. App. P. 32(a)(6)............................................................................28

Fed. R. App. P. 32(a)(7)(B) .....................................................................28

Fed. R. App. P 32(a)(7)(B)(iii) ................................................................28

## REPLY ARGUMENT

For the second time, Mr. Parnell seeks to avoid arbitration administered by the AAA or JAMS—a process successfully employed by other Western Sky borrowers. His first attack resulted in a reversal by this Court because his Loan Agreement clearly and unmistakably delegates issues of arbitrability to the arbitrator. His second attack fares no better. The express Delegation Provision[1] in Mr. Parnell's Loan Agreement invokes a strong federal policy—affirmed many times by the Supreme Court—favoring arbitration. *See DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 471 (2015); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 437 U.S. 614, 626, 105 S. Ct. 3346, 3353 (1985). Put simply, any doubts regarding the enforceability of the Delegation Provision must be "resolved in favor of arbitration." *Solymar Invs., Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 988 (11th Cir. 2012) (internal quotation marks and citations omitted); *accord AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650, 106 S. Ct. 1415, 1419 (1986). Mr. Parnell fails to overcome this strong presumption. Specifically, his renewed challenge suffers from the four independent defects outlined below.

*First*, Mr. Parnell concedes that he has raised no objection to the Delegation Provision substantively distinct from his challenge to the Arbitration Clause. To

---

[1] For consistency, defined terms in this reply brief have the same meaning as in Appellant's opening brief.

1

the extent he speculates that he can attack the Delegation Provision and Arbitration Clause on identical grounds, his theory runs afoul of binding Supreme Court precedent underlining the severability of the Delegation Provision. *See Rent-A-Ctr., W., Inc. v. Jackson,* 561 U.S. 63, 70-72, 130 S. Ct. 2772, 2778-79 (2010). Mr. Parnell fails to grasp the conceptual difference between his agreement to arbitrate and his agreement to delegate issues of arbitrability to the arbitrator. As a result, his "one size fits all" assault on the Loan Agreement simply does not apply to the Delegation Provision.

*Second*, Mr. Parnell cannot legally justify the district court's finding of unconscionability. He fails to distinguish *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 131 S. Ct. 1740 (2011), and other binding precedent barring state-law unconscionability defenses as applied to arbitration agreements. Separately, assuming unconscionability defenses survive *Concepcion* at all, the judicially created categorical rule of unconscionability that the district court applied lacks any pretense of a generally applicable contract defense under Georgia law. Mr. Parnell's fallback attempt to justify the district court's decision through neutral analysis fails because the Delegation Provision is not unconscionable.

*Third*, Mr. Parnell imports holdings from wholly distinguishable cases. His Loan Agreement, however, demands an individual analysis. This Court's decision in *Inetianbor v. CashCall, Inc*., 768 F.3d 1346 (11th Cir. 2014), did not address

2

and does not resolve whether *Mr. Parnell's Agreement* provides an available forum to resolve arbitrability issues, or whether the preference for tribal participation was integral for *these parties*. While a cut-and-paste approach is attractive to Mr. Parnell, individual review of his Loan Agreement requires a different result than that reached in *Inetianbor*.

*Fourth*, Mr. Parnell provides no response to CashCall's evidence that the AAA and JAMS are currently arbitrating similar disputes arising from nearly identical loan agreements. Nor does he defend the district court's failure to even consider CashCall's compelling evidence on this point. Contrary to Mr. Parnell's speculation, such arbitrations, proceeding pursuant to FAA § 5, are valid and the resulting awards enforceable.

All of Mr. Parnell's "sham process" rhetoric rings hollow in the face of unrebutted, unassailable evidence that the subject clause works and either the AAA or JAMS can, and should, effectively resolve Mr. Parnell's claims.

For these reasons and those set forth in CashCall's opening brief, the Court should reverse the trial court order and compel Mr. Parnell to arbitrate before the AAA or JAMS—his choice.

## I.    Mr. Parnell Still Fails To Identify Specific Grounds For Voiding The Delegation Provision.

Mr. Parnell concedes that his bases for criticizing the Delegation Provision and the Arbitration Clause are substantively indistinguishable. (Parnell Br. at 28–

33.) The Court need proceed no further to determine that Mr. Parnell fails to launch a *specific* attack on the Delegation Provision. Mr. Parnell must plead more than a nominal challenge: he must support his challenge on grounds unique to the Delegation Provision. The district court, moreover, was required to evaluate the challenge independently from his challenge to the Arbitration Clause. Separately, the grounds for invalidity advanced by Mr. Parnell do not apply to the Delegation Provision as a matter of law.

### A. The Delegation Provision And The Arbitration Clause Are Distinct Agreements That Cannot Be Voided Simultaneously On Identical Grounds.

Mr. Parnell incorrectly assumes that the Delegation Provision and the Arbitration Clause can be invalidated on substantively indistinguishable grounds by way of a single, fused analysis. (Parnell Br. at 28–33.) Not only does this monolithic approach disregard binding Supreme Court and Eleventh Circuit precedent, it also ignores the conceptual distinctions between the agreements embodied in the Arbitration Clause and the Delegation Provision.

Without doubt, an agreement delegating threshold issues of arbitrability to the arbitrator is distinct from the arbitration agreement as a whole. *Rent-A-Ctr.*, 561 U.S. at 70, 130 S. Ct. at 2777–78; *Parnell v. CashCall, Inc.* (hereinafter "*Parnell I*"), 804 F.3d 1142, 1148 (11th Cir. 2015). The delegation provision is "an additional, antecedent agreement," *Rent-A-Ctr.*, 561 U.S. at 70, 130 S. Ct. at 2777,

4

that is severable from the arbitration clause, *id* at 71–72, 130 S. Ct. at 2779. Just as an arbitration clause must be challenged separately and distinctly from the underlying agreement, so too must the delegation provision be challenged *separately and distinctly* from the arbitration clause. *Id.* at 71–72, 130 S. Ct. at 2778–79. The challenge must be both distinctly articulated, and supported by grounds uniquely applicable to the delegation provision. *Id.*; *Parnell I*, 804 F.3d at 1148–49 (applying *Rent-A-Center*'s framework). *Rent-A-Center* and *Parnell I* foreclose the blended approach adopted below by the district court at Mr. Parnell's urging.

In *Rent-A-Center*, Justice Scalia recognized the difficulty faced by parties seeking to avoid arbitrating their challenges to arbitration, even noting that "[i]n some cases the claimed basis of invalidity for the [underlying agreement] will be much easier to establish *than the same basis as applied only to the severable agreement*." *Rent-A-Ctr.*, 561 U.S. at 71, 130 S. Ct. at 2778. This makes perfect sense. A party cannot void an arbitration clause and an antecedent delegation provision on identical grounds because the agreements are substantively distinct and, therefore, not vulnerable to the same objections. Here, to be clear, Mr. Parnell has agreed (1) to submit his disputes with CashCall to arbitration; and (2) to allow an arbitrator to resolve challenges to the arbitration agreement. Mr. Parnell simply ignores this critical distinction when he contends that both agreements can be

5

voided in one fell swoop. *Rent-A-Center* teaches that a district court errs when, like here, it simultaneously and indiscriminately voids the delegation provision and the arbitration clause on indistinguishable grounds.

### B.    At Any Rate, Mr. Parnell's Grounds For Voiding The Arbitration Clause Fail When Applied To The Delegation Provision.

Setting aside whether a plaintiff might ever challenge an arbitration agreement and a delegation agreement on identical grounds, Mr. Parnell has not effectively done so because his omnibus grounds for invalidation simply do not apply to the Delegation Provision. Mr. Parnell posits that the Arbitration Clause and the Delegation Provision both are invalid because the Arbitration Clause purports to limit federal and state-law remedies. (*See* Parnell Br. at 34–47.) Such reasoning, however, runs afoul of *Rent-A-Center*: while a limitation on substantive remedies may suffice to challenge the arbitration clause as a whole, as a matter of common sense and Eleventh Circuit precedent it does not apply to the validity of the antecedent delegation agreement. As this Court has acknowledged, remedial restrictions contained within an arbitration clause "go to the validity of the *arbitration clause itself*." *Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1333 (11th Cir. 2005) (reversing the district court's order refusing to compel arbitration because the parties delegated the threshold issue of arbitrability, including enforceability of remedial restrictions, to the arbitrator). When parties delegate arbitrability challenges to an arbitrator, the arbitrator must evaluate

whether the remedial restriction invalidates the arbitration clause. *Id.* at 1333. Asserted limitations on substantive remedies, in other words, do not undermine the threshold delegation agreement. *See id.* at 1331–33 (enforcing delegation provision despite claimant's objection to remedial restrictions).

For this reason, Mr. Parnell's reliance on the prospective-waiver doctrine to invalidate the Delegation Provision misses the boat. Pretermitting whether the doctrine has any continued vitality, and ignoring that Mr. Parnell has asserted no federal claims,[2] his prospective-waiver objection has no application here. Prospective waiver concerns the right to pursue *substantive remedies* down the road, *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2310 (2013), not an arbitrator's ability to determine the validity of the Arbitration Clause. Yet Mr. Parnell's objections all focus on purported substantive impairments:

- The Loan Agreement purports to waive all state and federal *statutory rights* (Parnell Br. at 36);

- The Loan Agreement allows Western Sky to engage in lending practices outside the limits of federal law (*id.* at 36);

- The FAA does not permit parties to foreclose the possibility of having "federal *claims* heard in arbitration" (*id.* at 37); and

---

[2] As CashCall has explained, the prospective waiver doctrine is reserved for claims brought under *federal* statutes, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 627–29, 105 S. Ct. 3346, 3355 (1985), and in any event enjoys only dubious continued vitality, *DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 476 n.3 (2015) (Ginsburg, J. dissenting). (*See* Opening Br. at 52 n.13.)

- The Loan Agreement must preserve Mr. Parnell's right *to pursue statutory remedies* (*id.*).

While these might be appropriate issues for the arbitrator to consider in adjudicating Mr. Parnell's challenge to the Arbitration Clause as a whole, they have no bearing on the arbitrator's ability to do so. Put briefly, enforcement of the Delegation Provision precedes any consideration of substantive claims or relief.

Mr. Parnell's objection under Georgia unconscionability law fails for the same reason. He decries the alleged unavailability of state-law remedies—a consideration that does not disturb the validity of the Delegation Provision. Predictably, Mr. Parnell's prospective-waiver and unconscionability objections run parallel, and do not concern delegation:

- The terms of the Loan Agreement have the "purpose and effect of immunizing CashCall and company for any *violations of state law*";

- The Loan Agreement was "designed to insulate [CashCall] from *accountability*"; and

- The Arbitration Clause creates a world where state and federal *claims* are avoided.

(Parnell Br. at 44.) While Mr. Parnell exalts the weight that Georgia law affords to "pursuit of state statutory remedies," (*id.* at 45), his reliance on this concern is misplaced as applied to the Delegation Provision. As with his prospective-waiver objection, the availability of *substantive remedies* is relevant only to measuring a challenge to the underlying Arbitration Clause. *Terminix*, 432 F.3d at 1333.

Like Mr. Parnell here, the Fourth Circuit in *Hayes v. Delbert Services Corporation* failed to distinguish conceptually between an arbitration clause and an antecedent delegation agreement. *See* 811 F.3d 666 (4th Cir. 2016). In voiding the delegation provision on prospective-waiver grounds, the *Hayes* court overlooked that the availability of substantive remedies has no bearing on the agreement to delegate issues of arbitrability to the arbitrator. This failure ignores *Rent-A-Center*'s direction that a delegation clause objection must closely fit the question of delegation, and runs afoul of this Court's direction that remedial restrictions do not undermine a delegation agreement. *See Terminix*, 432 F.3d at 1333. The *Hayes* opinion invites district courts to improperly conflate arbitration clauses with delegation provisions and, as a result, to withhold threshold issues properly delegated to the arbitrator out of fear that substantive remedies will be foreclosed in arbitration on the merits. *See, e.g.*, *Smith v. Western Sky Fin., LLC*, --- F. Supp. 3d ----, No. 15-3639, 2016 WL 1212697 (E.D. Pa. Mar. 4, 2016). (*See also* Doc. 70.)

Mr. Parnell offers only *Hayes* as authority to invalidate the *Delegation Provision* due to remedial restrictions contained in the Arbitration Clause. Other cases Mr. Parnell cites are inapposite because they address direct challenges to arbitration clauses; not challenges to delegation agreements. In *Kristian v. Comcast Corporation*, for instance, the First Circuit panel considered whether an arbitration

9

clause could be enforced to the extent it barred the recovery of treble damages otherwise recoverable under federal antitrust laws. 446 F.3d 25, 29 (1st Cir. 2006). Similarly in *Booker v. Robert Half International, Inc.*, the D.C. Circuit panel considered whether an arbitration clause should be enforced to the extent it barred punitive damages otherwise available under federal antidiscrimination laws. 413 F.3d 77, 79–81 (D.C. Cir. 2005). As to Georgia law, the panel in *Cappuccitti v. DirecTV, Inc.* considered a direct challenge to an arbitration clause that would preclude recovery of attorneys' fees and costs. 623 F.3d 1118, 1125 (11th Cir. 2010). *Lomax v. Woodmen of World Life Insurance Society* addressed an arbitration clause that prohibited certain attorneys' fees and banned class wide arbitration. 228 F. Supp. 2d 1360, 1365 (N.D. Ga. 2002). These cases have no bearing on the validity of the Delegation Provision at issue.

This Court, moreover, does not write on a blank slate in evaluating whether Mr. Parnell's choice-of-law objections directly attack the Delegation Provision. Mr. Parnell advanced nearly identical objections on appeal from the district court's first order refusing to compel arbitration. This Court in *Parnell I* determined not only that Mr. Parnell's Complaint lacked any nominal challenge to the Delegation Provision, but also that the objections he did raise—based on the Loan Agreement's choice of law clause, forum requirements, and designation of Tribal jurisdiction—*failed in substance* to attack the Delegation Provision. 804 F.3d at

1148–49. Substantively, nothing has changed. Mr. Parnell supports his newly alleged nominal challenge with objections that, in this Court's own estimation, are insufficient to successfully target the Delegation Provision. *Id.* at 1149.

In sum, the Mr. Parnell's arbitration challenge is ineffective—standing alone—to void the Delegation Provision. Mr. Parnell failed to support his attack on grounds specifically applicable to the Delegation Provision. While Mr. Parnell theorizes generally that the Arbitration Clause and Delegation Provision can be voided for "the same reasons," (Parnell Br. at 28), he cannot explain how the reasons cited—including the alleged non-availability of federal and state remedies—bear upon his agreement to delegate arbitrability to the arbitrator. They do not.

## II.    The Delegation Provision May Not Be Voided On Unconscionability Grounds.

Setting aside that Mr. Parnell's grounds for unconscionability are inapplicable to the Delegation Provision, this Court should reverse the district court's decision to void the Provision on unconscionability grounds. Mr. Parnell fails to distinguish binding precedent holding that the FAA preempts state-law unconscionability defenses—if not all such defenses, certainly the application of a categorical rule targeting delegation provisions in tribal-lending agreements. Even under a generally applicable unconscionability analysis, moreover, the Delegation Provision is valid.

## A.    The FAA Preempts Mr. Parnell's Unconscionability Defense.

Mr. Parnell fails to resurrect state-law unconscionability doctrines from the death knell sounded by *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 131 S. Ct. 1740 (2011). Arbitration and delegation agreements, to be sure, may be invalidated on "grounds [that] exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. While the defense of unconscionability might in theory remain valid to the extent it is "not aimed at arbitration," (Parnell Br. at 25 (citing *In re Checking Account Overdraft Litig. MDL No. 2036*, 685 F.3d 1269 (11th Cir. 2012)), in application, the defense generates the sort of "disproportionate impact on arbitration agreements" absolutely prohibited by *Concepcion*. *See* 563 U.S. at 342, 131 S. Ct. at 1747.

The distinction Mr. Parnell attempts to draw as to *Concepcion* and this Court's decisions in *Pendergast v. Sprint Nextel Corp.* and *Cruz v. Cingular Wireless, LLC* is superficial at best. 691 F.3d 1224 (11th Cir. 2012); 648 F.3d 1205 (11th Cir. 2011). *Concepcion*, *Pendergast*, and *Cruz* sweep much broader than the class-action-waiver context from which they arose. Under *Concepcion,* substantive unconscionability defenses are preempted because the analysis to support them necessarily focuses on the *content* of the contractual provision at issue. By doing so, the defenses unfairly target matters either unique to arbitration, or that appear with greater frequency in arbitration agreements. As this Court has confirmed,

12

defenses that focus in any way on elements unique to an arbitration agreement are preempted. *Pendergast*, 691 F.3d at 1231.

The grounds for unconscionability advanced by Mr. Parnell illustrate that the defense cannot be applied even-handedly. Mr. Parnell protests that the designated *arbitral forum* supposedly does not exist; that the *arbitral* procedural rules supposedly do not exist; and that requiring *arbitration* under the terms of the Arbitration Agreement would limit his substantive remedies. All of these arguments "derive their meaning from the fact that an agreement to arbitrate is at issue," and would "disproportionate[ly] impact" arbitration agreements, *Concepcion*, 563 U.S. at 339, 342, 131 S. Ct. at 1746–47, even if they are "cast as an application of unconscionability doctrine," *Cruz*, 648 F.3d at 1211. The state-law unconscionability defense as urged by Mr. Parnell unfairly targets arbitration-based considerations and, accordingly, is preempted by *Concepcion*.

### B.    The Unconscionability Rule Applied By The District Court Improperly Targets Arbitration Agreements.

Pretermitting whether *Concepcion* preempts all state-law unconscionability doctrines, the arbitration-specific unconscionability rule applied by the district court certainly is preempted. Courts may not invalidate arbitration agreements "by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, 563 U.S. at 339, 131 S. Ct. at 1746; *accord Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S. Ct.

13

1652, 1655 (1996); *see also Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868, 875 (11th Cir. 2005) (state-law defenses permitted under the FAA must govern contracts generally, not arbitration clauses specifically). The same prohibition applies equally to delegation provision defenses. *Rent-A-Ctr.*, 561 U.S. at 70, 130 S. Ct. at 2778 (applying FAA § 2 to delegation provisions).

The *Concepcion* decision teaches that courts may not apply *per se* unconscionability rules targeting arbitration or delegation agreements. *Concepcion* addressed a judicially created categorical rule of unconscionability announced by the California Supreme Court that declared class-action waivers unconscionable when found in consumer contracts under certain enumerated circumstances. 563 U.S. at 340, 131 S. Ct. at 1746. Once articulated, the so-called *Discover Bank* Rule acted to short-circuit any individualized analysis of the arbitration agreement under a general unconscionability framework. The Court concluded that the FAA forecloses such categorical rules that routinely eviscerate arbitration provisions. *Id.* at 341–43, 131 S. Ct. at 1747; *see also Cruz*, 648 F.3d at 1213–14 (presupposing that *Concepcion* forecloses categorical rules that "mechanically invalidate" arbitration agreements).

The district court below applied precisely the sort of targeted, mechanical unconscionability rule barred by *Concepcion*. The district court's order fails to cite or engage with any general unconscionability framework. Rather than apply

standards for procedural and substantive unconscionability under Georgia law, *see, e.g.*, *NEC Techs., Inc. v. Nelson*, 267 Ga. 390, 391–92, 478 S.E.2d 769, 771–72 (1996), the court crafted a *per se* rule, ostensibly derived from this Court's holding in *Inetianbor* and the holdings of other courts to have addressed arbitration and delegation agreements in tribal-lending transactions. According to the district court, delegation provisions that reference participation by a tribal body are unconscionable. Like the *Discover Bank* Rule, the district court's biased rule targets only a subset of delegation provisions and short-circuits any individualized analysis under Georgia's unconscionability framework. This Court should reverse the district court because its unconscionability analysis was neither neutral nor generally applicable.

### C.    The Delegation Provision Is Not Unconscionable.

The district court's erroneous decision may not be cured by supplying a purportedly neutral unconscionability analysis because, simply put, the Delegation Provision is not unconscionable. The parties' agreement to commit threshold issues of arbitrability to a AAA or JAMS arbitrator neither offends "good morals and conscience" nor constitutes the type of agreement that "no sane man not acting under a delusion would make." *NEC Techs.*, 267 Ga. at 391 n.2, 478 S.E.2d at 771 n.2.

The Delegation Provision presents no procedural unconscionability. Contrary to Mr. Parnell's conjecture, the Delegation Provision was *not* offered on a take-it-or-leave-it basis: the Loan Agreement's clear terms allowed Mr. Parnell to opt out of the Arbitration Agreement altogether.[3] (Doc. 54-2 at 6.) He failed to do so. At any rate, even non-negotiable consumer contracts are "not per se unconscionable" in Georgia. *In re Checking Account Overdraft Litig. MDL No. 2036*, 672 F.3d 1224, 1229 (11th Cir. 2012) (*Hough v. Regions Fin. Corp.*). Mr. Parnell identifies no precedent to support his hypothesis that a delegation provision is unconscionable when the borrower does not receive a copy of the terms until after applying for a loan. (*See* Parnell Br. at 43.) Although the FTC has advanced this hypothesis as amicus curiae in other cases, *see* Br. of Federal Trade Commission as Amicus Curiae, *Jackson v. Payday Fin., LLC*, 764 F.3d 765 (7th Cir. 2014), 2013 WL 5306136 (Sept. 13, 2013), it has not done so here, and the resulting rule would defy sound reason and common sense. For a consumer to receive all the terms of *any* transaction prior to submitting an application or otherwise demonstrating interest in the product is extraordinary and unrealistic.

---

[3] Nor is the opt-out procedure oppressive. The "Right to Opt Out" provision requires the borrower to "advise [the lender] in writing . . . or via e-mail" at the stated physical or e-mail address within 60 days after the date the loan funds. (Doc. 54-2 at 6.) The notice must include only the borrower's "name and account number and state that [the borrower] reject[s] Arbitration." (*Id.*)

16

Such a flimsy "prior notice" requirement invites a slippery slope to vitiate any term contained in a consumer agreement on unconscionability grounds.

Nor is the Delegation Provision substantively unconscionable. Any remedial limitations contained generally in the Arbitration Clause do not attack the Delegation Provision specifically. Indeed, Mr. Parnell raises no grounds to find that agreement substantively unconscionable. An agreement to submit threshold issues of arbitrability to a AAA or JAMS arbitrator is commercially reasonable, serves no evil purpose, and creates no unconscionable effects. To the contrary, such delegation provisions are routinely enforced. *See, e.g.*, *Terminix*, 432 F.3d at 1333 (enforcing delegation provision despite remedial restrictions in the arbitration agreement); *U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308, 1311–12 (11th Cir. 2014) (enforcing parties' incorporation of the AAA's rules as a delegation of arbitrability to the arbitrator); *Nat'l Freight, Inc. v. Consolidated Container Co.*, --- F. Supp. 3d ----, Case No. 1:14-CV-03429-AT, 2015 WL 10568022, at *2–3 (N.D. Ga. Jan. 26, 2015) (enforcing effective delegation provision following *Terminix*). The district court's finding of unconscionability is unsupported under any acceptable analysis.

## III. *Inetianbor* and *Jackson* Are Not Relevant Here.

Rather than focus on the AAA and JAMS arbitration options provided to him, Mr. Parnell incorrectly urges this Court to import, without individual analysis,

holdings addressing different agreements with materially different terms. (*See* Parnell Br. at 48–54.) *Inetianbor v. CashCall, Inc.*, 768 F.3d 1346 (11th Cir. 2014) and *Jackson v. Payday Fin., LLC*, 764 F.3d 765 (7th Cir. 2014) are inapposite as the agreements at  issue did not provide for AAA or JAMS arbitration. Individual analysis of the instant agreement yields a different result: Mr. Parnell's Loan Agreement offers functional alternative forums, including the AAA or JAMS, to resolve questions of arbitrability.

## A. *Inetianbor* Does Not Replace An Individual Analysis Of Mr. Parnell's Contract Language.

Mr. Parnell wrongly concludes that his Loan Agreement provides no available forum on his belief that "[t]his Court has already held that" the forum is unavailable. (Parnell Br. at 48.) The available fora here, however, are determined by Mr. Parnell's contract, not Mr. Inetianbor's contract. And Mr. Parnell's Loan Agreement (unlike Mr. Inetianbor's) allows arbitration, without tribal participation, in the AAA, JAMS, or any other forum agreed upon by the parties. (*See* Doc. 54-2 at 5.)

### 1. THIS COURT MUST INTERPRET THE CONTRACT BEFORE IT.

Should this Court have any question regarding the arbitrator options designated to determine Mr. Parnell's various challenges, the Court should examine the entire arbitration clause "as a whole, give effect to each provision, and interpret each provision to harmonize with each other." *Arnsdorff v. Papermill*

18

*Plaza, LLC*, 326 Ga. App. 438, 440, 756 S.E.2d 668, 670 (2014). In doing so, it necessarily should avoid any interpretation that "renders portions of the contract language meaningless." *RLI Ins. v. Highlands on Ponce, LLC*, 280 Ga. App. 798, 802, 635 S.E.2d 168, 172 (2006). Contrary to Mr. Parnell's suggestion, this Court should "look to the *contract alone* for [its] meaning." *Id.* at 800, 635 S.E.2d at 171.

The holdings of this Court's panel in *Inetianbor* and of the Seventh Circuit panel in *Jackson* hinged on individualized interpretations of the specific language and structure of the arbitration agreements at issue in those cases. Critically important, the *Inetianbor* and *Jackson* borrowers agreed that arbitration would be conducted by either "(i) a Tribal Elder, or (ii) a panel of three (3) members of the Tribal Council." *Jackson*, 764 F.3d at 769; *Inetianbor v. CashCall, Inc.*, 962 F. Supp. 2d 1303, 1305 (S.D. Fla. 2013). Mr. Parnell's agreement, by contrast, contains a savings clause that explicitly permits Mr. Parnell to choose arbitration before the AAA, JAMS, or any other forum agreed upon by the parties. (*See* Doc. 54-2 at 5.) Moreover, Mr. Parnell's agreement does not require a "Tribal Elder" or "members of the Tribal Council" to participate in or conduct the arbitration. (*See id.* at 4–6.) For these reasons alone, Mr. Parnell's reliance on *Inetianbor* and *Jackson* is completely misplaced.

### 2.  THE AGREEMENT HERE REQUIRES A DIFFERENT RESULT FROM THAT REACHED IN *INETIANBOR* AND *JACKSON.*

When Mr. Parnell does make passing reference to the unique language in his Arbitration Agreement, he contorts the structure and terms in an attempt to manufacture the result in *Inetianbor*. (*See* Parnell Br. at 51–56.) Through this exercise he wrongfully concludes: (1) that the savings clause in the arbitration agreement is limited to other disputes; and (2) that "administer" cannot mean "conduct," such that the Choice of Arbitrator provision is meaningless. (*See id.*) The contract itself belies both improper conclusions.

Mr. Parnell assumes wrongly that the savings clause in his Arbitration Agreement refers only to a subsequent carve-out for certain, inapplicable disputes (small claims, for instance). Not so. The arbitration agreement states:

> You agree that any Dispute, *except as provided below*, will be resolved by Arbitration, which shall be conducted by the Cheyenne River Sioux Tribal Nation by an authorized representative in accordance with its consumer dispute rules and the terms of this Agreement.

(Doc. 54-2 at 4–5.) The savings clause—"*except as provided below*"—includes *multiple* carve-outs and exceptions. Key here, the Choice of Arbitrator provision allows Mr. Parnell to choose alternative fora, including the AAA and JAMS; the Small Claims Exception allows Mr. Parnell to bring certain claims outside the confines of the arbitration agreement; and the Right to Opt Out provision allows Mr. Parnell to exempt himself altogether from the arbitration agreement. (*Id.* at 5–

20

6.) The savings clause is broad, as intended, and answers each of Mr. Parnell's alleged concerns.

Likewise, the Loan Agreement itself undermines Mr. Parnell's semantic misconstruction of the terms "administer" and "conduct." Even if Mr. Parnell mistakenly believes that an arbitration administrator may not conduct arbitration, his Loan Agreement provides otherwise by employing the term "administer" within the provision entitled—in bold—"**Choice of Arbitrator**." As is occurring now, and as contemplated by Mr. Parnell's agreement, AAA or JAMS arbitrators are resolving loan disputes—without regard to whether their activities in doing so are labeled "conducting" or "administering" arbitration. (Doc. 54-1 at 21 and Exhibit B at 1–64 (evidencing ongoing arbitrations involving arbitration clause and delegation clause at issue here).) Indeed, what better term than "administer" to describe the conduct of AAA or JAMS arbitration pursuant to all of the procedural rules of the AAA and/or JAMS?

Mr. Parnell's reliance on *Williams v. CashCall, Inc.* is fruitless. Even after noting that the terms "conducting" and "administering" differ, the *Williams* court enforced the delegation provision because "the parties clearly agreed to resolve their disputes by arbitration." 92 F. Supp. 3d 847, 852–53 (E.D. Wisc. 2015) (examining identical contract language). Focusing on the parties' clear intent to

arbitrate, the court explained that, if necessary, FAA § 5 could be employed to allow the court to designate an available forum. *Id.* at 853.

Even if one could parse some meaningful distinction between "administering" and "conducting" arbitration, the reading that advances the strong federal presumption in favor of arbitration controls. *See Cruz*, 648 F.3d at 1213; *Solymar Invs., Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 988 (11th Cir. 2012) ("[A]ny doubts concerning the scope of arbitral issues should be resolved in favor of arbitration."). In other words, courts may not deny arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S. Ct. 1347, 1353 (1960). Whether "administering" or "conducting," the AAA or JAMS arbitrator here will resolve Mr. Parnell's disputes, and all doubts are resolved in favor of arbitration.

## B.    "Integrality" To The Extent Relevant, Is An Individual Inquiry.

Pretermitting whether FAA § 5 contains an exception for integral forum designations,[4] the *Inetianbor* panel's integrality findings are neither relevant nor dispositive. Just as the intent of the parties drives the Court's interpretation of the

---

[4] As CashCall has explained, the Supreme Court interprets absolute language in the FAA strictly. Section 5's mandate, therefore, that "the court *shall* designate and appoint an arbitrator" should not be read to include an exception where the lapsed arbitrator was integral to the agreement. 9 U.S.C. § 5 (emphasis added).

agreement's terms, the intent of the parties—that is, the intent behind *Mr. Parnell's Loan Agreement*—is key to determining integrality. *Inetianbor*, 768 F.3d at 1350 ("To decide whether the forum selection clause is integral, we must consider how important the term was to one or both of the parties at the time they entered into the agreement."); *see also Zechman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 742 F. Supp. 1359, 1364 (N.D. Ill. 1990) ("Where one term of an arbitration agreement has failed, the decision between substituting a new term for the failed provision and refusing to enforce the agreement altogether turns on the intent of the parties at the time the agreement was executed, as determined from the language of the contract and the surrounding circumstances." (internal quotation marks omitted)). By including different language, the parties to Mr. Parnell's Loan Agreement manifested different intent than did the parties to the separate and different *Inetianbor* agreement.

Individual analysis here, reveals that Mr. Parnell did not consider the tribal forum option to be integral to the arbitration agreement as a whole. Here, arbitration was not mandated under the "watchful eye of a legitimate governing tribal body." (*See* Parnell Br. at 49 (quoting *Jackson*, 764 F.3d at 779) (internal quotation marks omitted)) Rather, the parties here intended to, and in fact did, create *functional* alternative fora—the AAA, JAMS, or any other mutually agreeable organization. (*See* Doc. 54-2 at 5.) Here again, Mr. Parnell's citation to

23

*Williams* supports CashCall's position: though the language may not be perfect, "the parties clearly agreed to resolve their disputes by arbitration." 92 F. Supp. 3d at 852–53.

## IV.   Mr. Parnell Cannot Rebut Clear Evidence That Similar Disputes Are Proceeding Effectively In Arbitration.

CashCall's evidence is unrebutted that, pursuant to FAA § 5: (1) courts are enforcing delegation provisions contained in nearly identical agreements; and (2) the AAA and JAMS are *accepting* and *conducting* the resulting arbitrations.[5] The district court's analysis ignored this important evidence that, as a practical matter, eviscerated Mr. Parnell's contention of forum unavailability and "sham" process. Unable to dispute this evidence, Mr. Parnell only may offer self-serving speculation that such arbitrations will result in unenforceable awards. (*See* Parnell Br. at 56–57.)  Not so. Mr. Parnell's theorem—which entirely ignores section 5 of the FAA—finds no support in the authorities he's cited.

As an initial matter, Mr. Parnell's forecast of doom ignores FAA § 5, which already empowers district courts to appoint arbitrators or supply procedural rules without affecting the enforceability of the resulting arbitration award. Mr. Parnell is wrong. An award by an arbitrator, even if not named in the parties' agreement, is

---

[5]  In both its briefing below and to this Court, CashCall has explained that the AAA and JAMS have together accepted nearly a dozen arbitrations arising from the exact arbitration agreement at issue here. (*See* Opening Br. of Appellant at 36; Doc. 54-1 at 21 and Exhibit B at 1-64 (evidencing ongoing arbitrations involving arbitration clause and delegation clause at issue here).)

entirely proper and enforceable. Here, of course, Mr. Parnell's speculation is baseless as his agreement specifically allows for several different, undisputedly available, arbitration fora.

The authorities cited by Mr. Parnell do nothing to support his prediction that resulting awards of ongoing arbitrations will be invalid. They neither support nor apply to his position. *See Long John Silver's Rests., Inc. v. Cole*, 514 F.3d 345 (4th Cir. 2008); *Cargill Rice, Inc. v. Empresa Nicaraguense Dealimentos Basicos*, 25 F.3d 223 (4th Cir. 1994). *Long John Silver's* addressed conflicting methods for conducting class proceedings as between the FLSA and the AAA,[6] and the Fourth Circuit refused to vacate the award. 514 F.3d at 349, 352, 354. While *Cargill Rice* did address arbitrator selection, it did not consider FAA § 5. And, contrary to Mr. Parnell's forecasting, the Fourth Circuit panel anticipated that the district court, on remand, *could* appoint an arbitrator should the parties' agreed-upon mechanism lapse. 25 F.3d at 226.

Ultimately, Mr. Parnell cannot escape that courts are enforcing the exact delegation provision he purports to contest here. Most recently, the Middle District of Florida enforced an identical delegation provision and required the plaintiff to submit his arbitration objections to the arbitrator, as required by the delegation

---

[6] FLSA § 16(b) provides an "opt-in" rule to class-wide proceedings, whereas the AAA Class Rules contain an "opt-out" provision. *Long John Silver's Rests., Inc. v. Cole*, 514 F.3d 345, 348 (4th Cir. 2008).

provision. *Banks v. Cashcall, Inc.*, --- F. Supp. 3d ----, No. 6:14-cv-488-Orl-37TBS, 2016 WL 3021749 (M.D. Fla. May 26, 2016). Organizations like the AAA and JAMS, for their part, have accepted such arbitrations, and arbitrators are in fact resolving arbitrability disputes based on identical, or nearly-identical, choice-of-law and choice-of-forum provisions. (Doc. 54-1 at 21 and Exhibit B at 1–64 (evidencing ongoing arbitrations involving arbitration clause and delegation clause at issue here).) Such arbitrations are proceeding in accord with the parties' agreements, and are proceeding validly under FAA § 5.

## CONCLUSION

At bottom, the Loan Agreement indicates a clear intent to arbitrate questions of arbitrability. This Court should honor that intent. CashCall respectfully requests that this Court reverse the district court's order refusing to compel arbitration and remand to the district court with instructions that the case be sent immediately to arbitration either (a) before the AAA, JAMS, or any other forum agreed upon by the parties; or (b) before an alternative arbitral forum appointed under FAA § 5.

Respectfully submitted this 5th day of July, 2016.

**[signature on next page]**

**PARKER HUDSON RAINER & DOBBS LLP**

By: */s/ William J. Holley, II*
William J. Holley, II
Georgia Bar No. 362310
Nancy H. Baughan
Georgia Bar No. 042575
Erin M. Moore
Georgia Bar No. 590819

303 Peachtree Street, NE
Suite 3600
Atlanta, Georgia 30308
Telephone: (404) 523-5300
Facsimile: (404) 522-8409

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
Joseph L. Barloon
Austin K. Brown

1440 New York Avenue, NW
Washington, DC 20005
Phone: 202-371-7000
Fax: 202-393-5760

*Attorneys for Defendant-Appellant CashCall, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this reply brief complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(B).  This brief contains 5,964 words, excluding the parts of the brief exempted by Fed. R. App. P 32(a)(7)(B)(iii).  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6).  It has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

*/s/ William J. Holley, II*
William J. Holley, II

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 5, 2016, I electronically filed the foregoing Reply Brief, entitled Reply Brief of Appellant CashCall, Inc., with the Clerk of the Court by using the CM/ECF system.  I also further certify that the foregoing document was sent by United States Mail to:

Leah M. Nichols
**PUBLIC JUSTICE, P.C.**
1620 L St. NW
Suite 630
Washington, D.C. 20036

James W. Hurt, Jr.
**HURT STOLZ, P.C.**
345 W. Hancock Ave.
Athens, GA 30601

Christopher N. Armor
**ARMOR LAW, LLC**
303 Perimeter Center North, Suite 300
Atlanta, GA 30346

**ATTORNEYS FOR APPELLEE**


                                    */s/ William J. Holley, II*
                                    William J. Holley, II

4298626_4